UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEBORAH BRYANT,                                    Case No. 2016-cv-213-pp

        Plaintiff,

v.

BRITTANY L. WUERL,

        Defendant.

---

DEBORAH BRYANT,                                    Case No. 15-cv-1568-nj

        Plaintiff,

v.

JENNIFER RAMOS,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S/MOVANT'S MOTION TO CONSOLIDATE CASE NO. 2016-cv-213 WITH CASE NO. 2015-CV-1568-NJ (DKT. NO. 18 IN BOTH CASES)**

---

**Facts**

    On December 31, 2015, the plaintiff filed a complaint in federal court for the Eastern District of Wisconsin, alleging that Jennifer Ramos had violated her Fourth, Fifth and Fourteenth Amendment rights under 42 U.S.C. §1983. Bryant v. Ramos, 15-cv-1568-nj (E.D. Wis.), Dkt. No. 1. The allegations in the complaint related to an incident that occurred at the Elsa's on the Park restaurant on September 26, 2015. Id. The complaint alleged that the plaintiff was an actress on a reality show, and that as she was sitting at the restaurant

1

with a friend, other restaurant patrons joined them. Id. at 2. Somehow, this gathering led to the bartender, and then the restaurant manager (Brittany L. Wuerl, the defendant in the above-captioned case) calling the police. There is some dispute regarding whether the bartender and Wuerl called the police because of an unpaid food and beverage bill, or because the group was being disruptive. Id. at 2-3.

Jennifer Ramos (an officer with the Milwaukee Police Department) arrived at the restaurant, and ended up arresting the plaintiff, taking her into custody, and allegedly requesting that the plaintiff be prosecuted for "absconding without paying." Id. at 4. The Ramos case originally was assigned to Judge J. P. Stadtmueller.

On January 5, 2016—five days after the Ramos complaint was filed in federal court—the plaintiff filed a complaint in Milwaukee County Circuit Court, alleging malicious prosecution and defamation against defendant Wuerl. Dkt. No. 1-2 at 1. The allegations in the state-court complaint involved the same incident (in some places, the same language) as the allegations in the federal complaint filed against Ramos. Id. Instead of alleging that the defendant violated 42 U.S.C. §1983, however, the plaintiff alleged in the state court case that the defendant engaged in malicious prosecution and defamation by taking actions and making statements that caused Ramos to arrest and attempt to prosecute the plaintiff. Id.

On February 23, 2016, the defendant removed the state malicious prosecution/defamation case to this court. Dkt. No. 1. The case was assigned

2

to Magistrate Judge William E. Duffin, but the plaintiff refused to consent (Dkt. No. 4), and the case was re-assigned to Judge Pamela Pepper on February 23, 2016. A week later, on March 1, 2016, the Ramos case was reassigned to Magistrate Judge Nancy Joseph upon the parties' consent. Dkt. No. 9. Since that time, the two cases have been proceeding in federal court before two different judges.

Some water has passed under the bridge in the Bryant v. Ramos case (the first-filed). The defendant filed a motion to dismiss on February 19, 2016. Bryant v. Ramos, 15-cv-1568-nj at Dkt. No. 5. The plaintiff filed a brief in opposition on March 5, 2016, id. at Dkt. No. 11, and the defendant filed her reply on March 31, 2016, id. at Dkt. No. 14. Judge Joseph held a Rule 16 scheduling conference on March 16, 2016, id. at Dkt. No. 13, and set the following deadlines:

| | |
|---|---|
| Close of discovery | October 31, 2016 |
| Dispositive motions | November 30, 2016 |
| Final pretrial conference | March 17, 2017 at 10:00 a.m. |
| Three-day jury trial | March 27, 2017 at 9:00 a.m. |

On March 16, 2016, however—the same date that Judge Joseph held the scheduling conference in the Ramos case—the plaintiff's lawyer in this case filed a motion to withdraw. Bryant v. Wuerl, 16-cv-213-pp (E.D. Wis.) at Dkt. No. 14. The motion stated that defendant Wuerl's insurance company had informed counsel that his firm had a conflict of interest, but that the plaintiff had obtained new counsel. Id. This court granted the motion to withdraw by

3

text-only order. The Rule 16 scheduling conference in this—the Wuerl case—was scheduled for March 24, 2016. Dkt. No. 9.

Ahead of the Rule 16 conference in the Wuerl case, the parties filed their Rule 26(f) joint conference report. Dkt. No. 15. On page 4 of that report, under the heading, "Motions," the parties stated, "The Defendant also anticipates filing a motion to consolidate this case with Case No. 2:15-cv-01568-NJ, on or before March 24, 2016." Id. at 4. Consequently, at the March 24, 2016 Wuerl scheduling conference, this court asked the defendant how that would work, noting that Civil L. R. 42 required a party seeking consolidation to file the request in the first-filed case—the Ramos case before Judge Joseph—but that the plaintiff in the Wuerl case had not consented to a magistrate judge's authority to issue a final order. Id. at 1. Defense counsel asked for a deadline of April 25, 2016 to file the motion to consolidate (which would answer that question). The court set a briefing schedule, and adjourned the Rule 16 conference to June 10, 2016 at 9:30 a.m., indicating that it would hear oral argument on the motion to consolidate on that date. Id. at 2.

On April 18, 2016, the defendant filed the motion to consolidate in both cases. Ramos at Dkt. No. 18; Wuerl at Dkt. No. 18. The motion is fully briefed. Judge Joseph has not ruled on the motion to dismiss in Ramos, due to the pendency of the motion to consolidate.

**Judge Pepper Will Decide the Motion**

Civil Local Rule 42 governs the logistics of consolidation in this district. Rule 42(a) requires that the motion be decided "by the judge to whom the

4

lowest numbered case is assigned," and provides that if the motion is granted, "the judge to whom the lowest numbered case is assigned will handle all future proceedings covered by the consolidation order." The difficulty in this case is that the judge to whom the lowest numbered case is assigned is Magistrate Judge Joseph, and while both parties in the Ramos case have consented to Judge Joseph's authority to decide the case, the plaintiff in the Wuerl case has declined to consent. Thus, Judge Joseph cannot decide the motion to consolidate in Wuerl, and if the case were to be consolidated, she could not issue a final decision in the consolidated case.

Judge Adelman faced the same conundrum in Van Patten v. Wright, 2009 WL 1886010, Nos. 07-cv-788, 07-cv-26 (E.D. Wis. June 30, 2009). Judge Adelman concluded that, although the case before him had a higher docket number than the case pending before Magistrate Judge William E. Callahan, Jr., he would decide the motion. Id. at *1. While Judge Adelman did not say as much, the court infers from this that Judge Adelman decided that because there was no district court judge assigned to the lower-numbered case, by operation of the rule, he was the only one who could decide the motion. This court also notes that General Local Rule 1 provides that while the court expects parties to comply with the local rules, "the rules are intended to be enforced primarily upon the Court's own initiative . . . ." A case like this, in which strict adherence to L.R. 42 would mean that there would be no district court judge available to decide the motion, seems a good one for the court to exercise its

5

initiative not to follow that rule. Thus, like Judge Adelman, I will decide the motion to consolidate.

**<u>The Court Will Grant the Motion to Consolidate</u>**

Federal Rule of Civil Procedure 42(a) states that if cases "involve a common question of law or fact," the court "may" join particular matters for hearing or trial, consolidate the cases, or "issue any other orders to avoid unnecessary cost or delay." The Seventh Circuit reviews a district court's decision on consolidation "only for abuse of discretion." <u>Star Ins. Co. v. Risk Marketing Group, Inc.</u>, 561 F.3d 656, 660 (7th Cir. 2009) (citation omitted). "In deciding whether to consolidate cases, courts exercise broad discretion and try to consolidate where possible." <u>SJ Props Suites, BuyCo, EHF v. Dev. Opportunity Corp.</u>, 2009 WL 3790009, Nos. 09-cv-533, 09-cv-569, at *1 (E.D. Wis. Nov. 12, 2009) (citing <u>United States v. Knauer</u>, 149 F.2d 519, 520 (7th Cir. 1945)). "Consolidation is preferred to avoid unnecessary duplication of efforts in related cases and promote judicial economy and efficiency." <u>Id.</u> (citations omitted). Courts should decline to consolidate if consolidation would lead to confusion or prejudice. <u>Id.</u>

When one reads the facts in the two cases before this court, consolidation appears to be the appropriate and logical solution. The two cases arise out of the same incident—the events that took place at Elsa's on the evening of September 26, 2015. The plaintiff alleges that the events of that evening did not give defendant Ramos probable cause to arrest the plaintiff, and she argues that the events of that evening demonstrate that defendant

6

Wuerl defamed and maliciously prosecuted her. The causes of action are different, but the facts that give rise to the causes of action are identical. Even the two causes of action are linked—the plaintiff alleges that Wuerl's allegedly defamatory statements are part of what caused Ramos to arrest her without probable cause.

The two cases also involve at least one common question of law. The plaintiff's Fourth Amendment claim against Ramos and her malicious prosecution claim against Wuerl both require the finder of fact to determine whether there was probable cause to arrest or charge the plaintiff. See, e.g., Tower Special Facilities, Inc. v. Inv. Club, Inc., 104 Wis. 2d 221, 227 (Ct. App. 1981) (one of the six elements of a malicious prosecution claim under Wisconsin law is that "there must have been want of probable cause for the institution of the former proceedings"); Heil Co. v. Hartford Accident and Indem. Co., 937 F. Supp. 1355, 1362 (E.D. Wis. 1996) ("want of probable cause" one of the "six essential elements" of the common law tort of malicious prosecution).

In opposing the motion to consolidate, the plaintiff stated that "[t]he standard for [the probable cause element] of malicious prosecution is lower [than the standard for probable cause necessary for an arrest under the Fourth Amendment]," and asserted that "instructing the jury on two standards for probable cause will confuse the jury." Wuerl, Dkt. No. 22 at 3. At oral argument on the motion to consolidate, the court asked counsel for the plaintiff for authority supporting this statement. Counsel for the plaintiff pointed the

7

court to Diaz-Colon v. Toledo-Davila, 922 F. Supp. 2d 189 (D. Puerto Rico 2013). Counsel argued that on page 204 of the Puerto Rico district court's decision, that court found that "for a claim of malicious prosecution to be successful under section 1983," the plaintiffs had to prove, among other things, that "the defendants acted with malice and without probable cause." Id. at 204.

This court disagrees that this sentence creates a different standard for proving probable cause for malicious prosecution than exists for Fourth Amendment claims. The Diaz-Colon court's case, while well-reasoned, does not bind this court. Nor did it involve a claim of malicious prosecution under Wisconsin law. Most important, however, it did *not* create a new probable cause standard; it indicated only the fact that to prove malicious prosecution, a plaintiff must show lack of probable cause *and* malice. The probable cause standard remained the same; the Diaz-Colon court indicated only that the plaintiff had to prove probable cause *plus* something else—malice. This court sees no likelihood that a jury would be confused about an instruction that, for both malicious prosecution and a Fourth Amendment claim, the plaintiff would have to show that there was no probable cause.

The plaintiff also argued that the damage issues would be different in the two cases, and thus would require different discovery. In Ramos, the plaintiff seeks damages for lost business and wages; damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reputational damages, and other non-pecuniary losses; punitive damages; and fees and

8

costs. Ramos, Dkt. No. 1 at 8-9. In Wuerl, the plaintiff seeks lost business and wages; damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reputational damages, and other non-pecuniary losses; punitive damages; and fees and costs. Wuerl, Dkt. No. 1-2 at 8. The language of the prayers for relief is identical. Counsel for the plaintiff argued at the hearing on the motion that the witnesses for the damages suffered in the defamation case (the people who heard the allegedly defamatory remarks) would be different than the witnesses for the damages suffered in the §1983 case. This may be, but the plaintiff would have to produce the two sets of witnesses even if the court did not consolidate the cases; it is not clear how conducting discovery in a single case with multiple claims is more costly or difficult to the plaintiff than conducting discovery in two cases with multiple claims.

Indeed, the defendants in both cases argued that if the court did not exercise its discretion to consolidate, there was a risk that the plaintiff could collect twice for the same injuries. Counsel argued that the jury in the second case to go to trial might award damages for the same injuries as the jury in the first case, without knowing that the plaintiff already had been compensated for those injuries. Counsel wondered how the two judges would be able to avoid that. They also argued that if the court were to refuse to consolidate, the parties could raise some of the same legal issues in front of two different judges and possibly obtain different, conflicting results. These concerns seem more

9

relevant to the court than the plaintiff's concerns about the necessity of different kinds of damages discovery for each defendant.

The plaintiff's most vehement argument against consolidation had to do with the prejudice she argued she would suffer with regard to her ability to retain counsel. The plaintiff lives in Atlanta, Georgia. Wuerl, Dkt. No. 1 at 2. She is represented in Bryant v. Ramos by the Milwaukee law firm of Peterson, Johnson & Murray, S.C. When the Wuerl case was removed from Milwaukee County Circuit Court to this court, the plaintiff also was represented by Peterson, Johnson & Murray. Wuerl, Dkt. No. 2. Later in the Wuerl case, however, the Peterson firm filed a motion asking to withdraw from representing the plaintiff, because it turned out that that firm also does work for defendant Wuerl's insurance company. Dkt. No. 14; Dkt. No. 22 at 2. On March 16, 2016, Attorney Patrice A. Sulton of Washington, D.C. filed a notice of appearance on behalf of the plaintiff in the Wuerl case. Wuerl, Dkt. No. 13. Attorney Sulton appeared at the June 10 hearing on the motion to consolidate, as did an attorney from Peterson, Johnson and Murray who had appeared for the sole purpose of arguing this issue. See Wuerl, Dkt. Nos. 21, 27.

At the June 10 hearing, counsel from Peterson argued that it had been very difficult for the plaintiff to find a lawyer to represent her. Counsel argued that, being an Atlanta resident, the plaintiff did not have the kinds of connections in Wisconsin that would enable her to find a lawyer. Counsel indicated that the plaintiff already had gone through several lawyers. She argued that if the court consolidated the two cases, then the Peterson firm

10

would be conflicted out of representing the plaintiff in the Ramos case, and would have to start all over and find a lawyer.

The fact that consolidation will cause the Peterson firm to be conflicted out of both cases is not a sufficient justification for allowing these two very similar cases to proceed along separate tracks. The court concedes that the plaintiff's need to find a new lawyer will slow things down, and understands that that can be frustrating to all parties. But the court is stymied by the plaintiff's argument that one needs to live in Milwaukee in order to find a Milwaukee lawyer. In 2016, one need only have an Internet-connected device to be able to find lawyers anywhere in the country. This is how many people who live in *Wisconsin* find lawyers; many people who find themselves in court lack connections to the legal community, and find attorneys through on-line services such as these.

It is an unfortunate twist of fate that the firm the plaintiff chose, and who agreed to represent the plaintiff, turned out to represent the insurance company of one of the defendants the plaintiff sued. But such conflicts happen, and when they do, the client must find new counsel if the conflict cannot otherwise be resolved. While it will be a burden for the plaintiff to find a new attorney to represent her, the court has to weigh that burden against the burden on the court system and the defendants that would be caused by allowing the cases to proceed separately.

**Conclusion**

The court **GRANTS** defendant Wuerl's motion to consolidate. (Dkt. No. 18 in both cases). The court **ORDERS** that the clerk's office will consolidate all of the pleadings and docket entries in both cases under Bryant v. Wuerl, 16-cv-213-pp. The court **ORDERS** that all future pleadings and other filings shall be docketed under the caption Bryant v. Wuerl and Ramos, 16-cv-213-pp.

The court will, by separate order, set a status conference to discuss scheduling, ruling on the Ramos motion to dismiss, and other issues.

Dated in Milwaukee, Wisconsin this 6th day of July, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge